FILED

10 AUG -9 AM 10:00

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABINE SCHUDEL and RAMON TOLEDO,<br><br>                              Plaintiffs,<br>   vs.<br>SEARCHGUY.COM, INC., *et. al.*,<br>                              Defendants. | CASE NO. 07cv0695 BEN (BLM)<br><br>**ORDER GRANTING DEFAULT JUDGMENT**<br><br>[Dkt. Nos. 124, 146] |

## INTRODUCTION

Plaintiffs' motion for default judgment against Defendants Florence Equity, LLC, Internetplays.com, LLC, and Tabmeta, Inc. ("Entity Defendants") and motion to prove-up damages as to Defendant Thomas Bibiyan are before the Court. Dkt. Nos. 124, 146. The Court previously entered default judgment against Bibiyan and now grants Plaintiffs' motion for default judgment against the Entity Defendants because each has failed to appear in this case for more than twenty months. The Court awards Plaintiffs $219,578 in damages against Bibiyan and the Entity Defendants. The Court awards Searchguy.com $100,000 in breach of contract damages, ten percent pre-judgment interest on the contract damages, and $16,646.29 in attorney fees against Bibiyan and the Entity Defendants. The Court awards Searchguy.com, Inc. an additional $11,892,000 in damages against Bibiyan.

///

# BACKGROUND

## I. Factual Background

The First Amended Complaint ("FAC") asserts numerous causes of action based on violations of federal and California securities law, breach of fiduciary duties, fraud, constructive fraud, and breach of contract. Plaintiffs brought personal claims on their own behalf and derivative claims on behalf of Searchguy and its affiliated subsidiaries ShaggyMedia and Searchguy Mobile, named here as nominal defendants. Searchguy purported to be a new internet search engine company.

The claims arise out a fraudulent scheme under which Rachitsky,[1] Bibiyan,[2] and the Entity Defendants, alter egos of Rachitsky and Bibiyan, issued at least ten false press releases and made other statements to induce investors, including Plaintiffs, to purchase shares. This fraudulent conduct created an artificially inflated price. Defendants would then dump their illegally obtained shares, driving the price down. Defendants also breached fiduciary duties to Searchguy through gross mismanagement, issuance of millions of shares without consideration, self dealing, diversion of corporate assets to Defendants, and trading on non-public information.

From May to July 2004, Bibiyan caused 18,500,000 unrestricted Searchguy shares to be issued to a number of entities for no consideration and without any authorization from Searchguy's board. These shares were then sold on the public market through these entities beginning in June 2004. Under Bibiyan's direction, Searchguy apparently never had a bank account, prepared financial statements or tax returns, or held a shareholders or board of directors meeting. Defendants issued false and misleading statements, inducing investors to purchase shares and failing to disclose that millions of shares had been issued for little or no consideration. Defendants were responsible for the false and misleading information, knew it was false and misleading, and profited from the misleading statements.

///

///

---

[1] All claims against Rachitsky were settled.

[2] Bibiyan is also known as Derek Leviton.

Plaintiff Toledo began purchasing shares in August 2004, eventually owning 2,336,862 shares. When Toledo learned about the fraudulent scheme, he consulted counsel and ultimately provided Rachitsky and Bibiyan with a copy of a proposed complaint related to their fraudulent conduct and threatened to file it. That Complaint contained some of the same claims asserted in the FAC in this case. The Settlement Agreement followed.

Under the Settlement Agreement, Toledo, on behalf of Searchguy, would purchase all of Bibiyan and Rachitsky's shares for $150,000 with $100,000 payable to Bibiyan upon execution of the Settlement Agreement and the final $50,000 payable in six months. In exchange, Defendants would deliver all corporate documents, turn over their shares, and Rachitsky and Bibiyan would resign. The settlement was intended to end Bibiyan and Rachitsky's involvement with Searchguy and allow the company to start operating properly. Toledo paid the initial $100,000 on behalf of Searchguy, but Bibiyan and Rachitsky never turned over any corporate documents, shareholder lists, or their shares and then issued another 1,800,000 in new unrestricted shares. This action followed.

## II.     Procedural Background

Personal claims against Rachitsky were settled and dismissed on April 6, 2009. Dkt. No. 86. The derivative claims against Rachitsky were settled and dismissed with Court approval on May 3, 2010. Dkt. No. 139. Default judgment was entered against Bibiyan on May 13, 2010. Dkt. No. 143. And the Clerk entered default against the Entity Defendants on December 15, 2009. Only the entry of default judgment against the Entity Defendants and the appropriate amount of damages as to the Entity Defendants and Bibiyan remain.

## DISCUSSION

### I.     Default Judgment

The Court grants Plaintiffs' motion for default judgment against the Entity Defendants because each has failed to abide by the Court's orders to retain counsel and have completely failed to defend themselves in this action for almost two years. Additionally, all the *Eitel* factors weigh in favor of granting default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

///

On November 12, 2008, this Court ordered the Entity Defendants to retain counsel to represent them in this case by November 28, 2008. Dkt. No. 75. As entities, they cannot appear without counsel before this Court. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-202 (1993); Civ LR 83.3(k). Two orders from the Court indicated that, as Entity Defendants, they could not represent themselves in the case without counsel. Dkt. Nos. 65, 75. Additionally, former counsel for the Entity Defendants indicated, in seeking to withdraw as counsel with the consent of the Entity Defendants, that each was aware they could not represent themselves in this litigation.

Failure to comply with a local rule that requires a corporation be represented by counsel is sufficient to support default judgment. *See Emp. Painter's Trust v. Ethan Enter., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007) (upholding grant of default judgment against corporate defendant based on failure to retain counsel as required by local rule). Despite the Entity Defendants' knowledge of the requirement, two orders from the Court indicating retention of counsel was required, a specific order from the Court to retain counsel by a date certain, the Clerk's entry of default against them, and Plaintiffs' motion to default judgment, they have failed to retain counsel or defend against this action.

Additionally, all the *Eitel* factors weigh in favor of granting default judgment: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy . . . favoring decisions on the merits." 782 F.2d at 1471-72.

Plaintiffs will be prejudiced if default judgment is not entered because, if the Court denies the motion, Plaintiffs have no other means to recover for the alleged conduct, as the Entity Defendants have refused to respond to this action. There is nothing before the Court that would suggest the lack of response from the Entity Defendants was the result of excusable neglect. The sum of money at stake is not significant when the Court considers it in relation to the Entity Defendants' fraudulent conduct, and while there is a strong policy favoring disposition on the merits, that option is not available where, as here, a defendant has failed to participate in the

litigation. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176-77 (C.D. Cal. 2002). Finally, the merits of Plaintiffs' substantive claims and the sufficiency of the FAC also weigh in favor of granting default judgment.

The Court **GRANTS** Plaintiffs' motion for default judgment against Florence Equity, Internetplays.com, and Tabmeta under Federal Rule of Civil Procedure 55(b). Having entered default judgment against the Entity Defendants and previously entered default judgment against Bibiyan, the Court must now determine the appropriate amount of damages.

## II. Damages

Defendants' defaults establish their liability, but damages must be proven. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### A. Plaintiffs' Damages

Plaintiffs seek $219,494 in damages against Bibiyan and the Entity Defendants for violation of federal and California securities law and common law fraud and $27,850 in software development costs.

#### 1. Securities Claims and Fraud

"The usual measure of damages for securities fraud claims under Rule 10b-5 is out-of-pocket loss; that is, the difference between the value of what the plaintiff gave up and the value of what the plaintiff received." *Ambassador Hotel Co., Ltd. V. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999). As for the fraud claim, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709.

Plaintiffs have produced evidence Plaintiffs paid $352,882 in purchasing Searchguy shares and Plaintiffs received $133,305 through sale of some shares and the present value of remaining shares. This results in a difference of $219,578.[3] The Court finds Plaintiffs are entitled to $219,578 in damages against Bibiyan and the Entity Defendants.

///

---

[3] The Court relies on Plaintiffs' expert's calculation rather than the amount requested by Plaintiffs.

### 2. Software Development Damages

Plaintiffs also seek $24,850 in damages for common law fraud for amounts Plaintiffs expended on software development. However, the FAC lacks any allegations concerning this conduct. Facts must be "established by the pleadings." *Alan Neuman Prods., Inc v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). This deficiency in the FAC cannot be cured at this stage. *Id.* at 1393. The Court will not award these damages.

### B. Searchguy's Damages

Plaintiffs also seek damages derivatively on Searchguy's behalf. Plaintiffs seek, on Searchguy's behalf, $100,000 for breach of contract, $16,646.29 in attorneys fees, and ten percent pre-judgment interest on the breach of contract damages against the Entity Defendants and Bibiyan. Plaintiffs also seek, on Searchguy's behalf, $11,892,000 in damages against Bibiyan for violation of federal and California securities laws and constructive fraud.

### 1. Breach of Contract Damages, Interest, and Attorneys Fees

"The basic object of damages is *compensation*, and in the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance." *Lisec v. United Airlines, Inc.*, 10 Cal. App. 4th 1500, 1503 (6th Dist. 1992) (emphasis in original). California Civil Code § 3289 provides for ten percent pre-judgment interest after a breach of contract.

Pursuant to the Settlement Agreement, Defendants received $100,000 from Searchguy. In exchange, Defendants were to provide certain corporate documents, turn over their shares, and resign from Searchguy. Defendants did nothing they were required to do under the Settlement Agreement and actually continued to issue shares, resulting in a breach of the contract. The Court finds Searchguy is entitled to $100,000 in damages for breach of contract plus ten percent interest commencing from April 17, 2007 against Bibiyan and the Entity Defendants.

A prevailing party in an action to enforce a contract is entitled to attorney's fees when the contract specifically provides for attorney's fees. Cal. Civ. Code § 1717. The Settlement Agreement provided that the prevailing party in any action to enforce the agreement "shall be

entitled to recover from the other its reasonable attorney's fees." Counsel had provided the Court a declaration attesting to a minimum of $16,464.29 in attorney's fees incurred in prosecution and defense of the breach of contract claim. The Court finds Searchguy is entitled to $16,464.29 in attorney's fees.

### 2. Securities Claims and Constructive Fraud

As previously explained, the appropriate measure of damages for the securities claims is the out-of-pocket loss, i.e., the difference in what Searchguy gave up and what Searchguy received. *Ambassador Hotel*, 189 F.3d at 1030. The measure of damages for constructive fraud is broader, providing "compensation for any and all the detriment proximately caused by the fiduciary breach." *Salahutdin v. Valley of Cal., Inc.*, 24 Cal. App. 4th 555, 568 (1st Dist. 1994) (applying California Civil Code §§ 1709 and 3333).

Plaintiffs produced evidence that Searchguy suffered $11,892,000 in damages from Bibiyan's issuance of 20,300,000 Searchguy shares for no consideration, in violation of his fiduciary duties. The calculation is based on the fair market value of the stock on the date of issuance. The Court finds Searchguy is entitled to $11,892,000 in damages against Bibiyan.

### CONCLUSION

The Court **GRANTS** Plaintiffs' motion for default judgment against Florence Equity, Internetplays.com, and Tabmeta under Federal Rule of Civil Procedure 55(b). The Court awards Plaintiffs $219,578 in damages against Bibiyan and the Entity Defendants. The Court awards Searchguy $100,000 in breach of contract damages, ten percent pre-judgment interest on the contract damages commencing from April 17, 2007, and $16,646.29 in attorney fees against Bibiyan and the Entity Defendants. Additionally, the Court awards Searchguy $11,892,000 in damages against Bibiyan.

The Clerk shall close the case.

IT IS SO ORDERED.

DATED: August _, 2010

Hon. Roger T. Benitez
United States District Judge